# BLACKFEATHER v. UNITED STATES.

## APPEAL FROM THE COURT OF CLAIMS.

No. 276. Argued May 1, 1903.—Decided June 1, 1903.

The moral obligations of the government towards the Indians are for Congress alone to recognize, and the courts can exercise only such jurisdiction over the subject as Congress may confer upon them.

Under the act of October 1, 1890, 26 Stat. 636, jurisdiction was conferred upon the Court of Claims to hear and determine the rights in law or equity of the tribes of the Shawnee and Delaware Indians arising out of the subject matter referred to in the act, and there is no grant of jurisdiction to hear or determine the rights of individual members of those tribes. The claims of the Shawnee Indians which under the act of July 1, 1892, were to be presented to the Court of Claims are those of a tribe or band of Indians and not of individual members thereof.

Statutes which extend the jurisdiction of the Court of Claims and permit the government to be sued will be strictly construed, and the grant of jurisdiction therein contained must be shown clearly to cover the case and if it do not it will not be implied.

THE petitioner filed his amended petition in the Court of Claims in August, 1892, in which he asked to recover from the United States over five hundred and thirty thousand dollars on the grounds therein set forth. There was a demurrer to the amended petition by the United States on the ground that it did not allege facts sufficient to constitute a cause of action. The demurrer was sustained, 37 C. Cl. 233, and the plaintiff has appealed to this court.

In his petition the petitioner represents himself as a Shawnee Indian by blood and descent, a member and the principal chief of the Shawnee Tribe or Nation, and residing in the Indian Territory. He states that he brings suit in the Court of Claims as such principal chief of such Shawnee Tribe or Nation under the provisions of two acts of Congress, the first of which is entitled "An act to refer to the Court of Claims certain claims of the Shawnee and Delaware Indians and the freedmen of the Cherokee Nation, and for other purposes," approved October 1, 1890, 26 Stat. 636, and the second entitled, "An act supple-

mentary and amendatory to an act entitled ' An act to refer to the Court of Claims certain claims of the Shawnee and Delaware Indians and the freedmen of the Cherokee Nation, and for other purposes,' approved October first, eighteen hundred and ninety," approved July 6, 1892. 27 Stat. 86. These acts are set out in the margin.[1]

---

[1] Act of 1890. 26 Stat. 636.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That full jurisdiction is hereby conferred upon the Court of Claims, subject to an appeal to the Supreme Court of the United States as in other cases, to hear and determine what are the just rights in law or in equity of the Shawnee and Delaware Indians, who are settled and incorporated into the Cherokee Nation, Indian Territory, east of ninety-six degrees west longitude, under the provisions of article fifteen of the treaty of July nineteenth, eighteen hundred and sixty-six, made by and between the United States and the Cherokee Nation, and articles of agreement made by and between the Cherokee Nation and the Shawnee Indians, June seventh, eighteen hundred and sixty-nine, approved by the President June ninth, eighteen hundred and sixty-nine, and articles of agreement made with the Delaware Indians April eighth, eighteen hundred and sixty-seven; and also of the Cherokee freedmen, who are settled and located in the Cherokee Nation under the provisions and stipulations of article nine of the aforesaid treaty of eighteen hundred and sixty-six in respect to the subject matter herein provided for.

SEC. 2. That the said Shawnees, Delawares, and freedmen shall have a right, either separately or jointly, to begin and prosecute a suit or suits against the Cherokee Nation and the United States Government to recover from the Cherokee Nation all moneys due either in law or equity and unpaid to the said Shawnees, Delawares, or freedmen, which the Cherokee Nation have before paid out, or may hereafter pay, per capita, in the Cherokee Nation, and which was, or may be, refused to or neglected to be paid to the said Shawnees, Delawares, or freedmen by the Cherokee Nation out of any money or funds which have, or may be, paid into the treasury of, or in any way have come, or may come, into the possession of the Cherokee Nation, Indian Territory, derived from the sale, leasing, or rent for grazing purposes on Cherokee lands west of ninety-six degrees west longitude, and which have been, or may be, appropriated and directed to be paid out per capita by the acts passed by the Cherokee council, and for all moneys, lands, and rights which shall appear to be due to the said Shawnees, Delawares, or freedmen under the provisions of the aforesaid articles of treaty and articles of agreement.

SEC. 3. That the said suit or suits may be brought in the name of the principal chief or chiefs of the said Shawnee and Delaware Indians, and for the freedmen and in their behalf and for their use in the name of some per-

The petitioner asks to recover and collect from the United States the several amounts of money thereafter set out at length in payment for the destruction, loss, forcible taking, carrying and driving away live stock, farm products, household goods, money and other personal property of divers descriptions and kinds belonging to, owned and possessed by and the property of the said Shawnee Indians, by white and United States citizens and soldiers, in the State of Kansas and the Indian Territory, at divers times and places in the year 1861, and all the time up to and including the year 1866. Reference is then made to a schedule which is made part of the petition, and in which appear the names of between three and four hundred Indians, and the schedule gives their individual claims, varying in amounts from as high as $7000 down to $75, and aggregating $530,945.14.

It is contended that the claims arise out of treaty relations with the United States, (mentioned in the foregoing acts of Con-

---

son as their trustee, to be selected by them with the approval of the Secretary of the Interior. And the exercise of such jurisdiction shall not be barred by any lapse of time heretofore, nor shall the rights of such Indians be impaired by any acts passed and approved by the Cherokee national council. Suits may be instituted within twelve months after the passage of this act, and the law and practice and rules of procedure in such courts shall be the practice and law in these cases; and copies of the petitions filed in the case at the commencement of the suit shall be served upon the Attorney General of the United States and on the principal chief in the Cherokee Nation by the marshal of the District Court for the Indian Territory; and that the costs of the said suits shall be apportioned between the United States and the other parties to such suits as to said court law and equity shall require. The Attorney General shall designate and appoint from the Department of Justice a person who is competent to defend the said Cherokee Nation and the United States. And the said Shawnees, Delawares, and freedmen may be represented by attorneys and counsel. And the court is hereby authorized to decree the amount of compensation of such attorneys and counsel fees, not to exceed ten per centum of the amount recovered, and order the same to be paid to the attorneys and counsel of the said Shawnees, Delawares, and freedmen; and all judgments for any sum or sums of moneys which may be ordered or decreed by such court in favor of the Shawnees, Delawares, or freedmen, and against the Cherokee Nation, shall be enforced by the said court or courts against the said Cherokee Nation by execution mandamus, or in any other way which the said court may see fit.

gress,) particularly articles 11 and 14 of the treaty of May 10, 1854, 10 Stat. 1053, 1057, between the United States and the Indians, and also out of sections 2154 and 2155 of the Revised Statutes of the United States. The articles of the treaty are as follows:

" ARTICLE 11. It being represented that many of the Shawnees have sustained damage in the loss and destruction of their crops, stock, and other property, and otherwise, by reason of the great emigration which has, for several years, passed through their country, and of other causes, in violation, as they allege, of guaranties made for their protection by the United States; it is agreed that there shall be paid, in consideration thereof, to the Shawnees, the sum of twenty-seven thousand dollars, which shall be taken and considered in full satisfaction, not only of such claim, but of all others of what kind soever, and in release of all demands and stipulations arising under former treaties, with the exception of the perpetual annuities, amounting to three thousand dollars, hereinbefore named, and which

SEC. 4. That the said Shawnee Indians are hereby authorized and empowered to bring and begin a suit in law or equity against the United States Government, in the Court of Claims, to recover and collect from the United States Government any amount of money that in law or equity is due from the United States to said tribes in reimbursement of their tribal fund for money wrongfully diverted therefrom. The right to appeal, jurisdiction of the court, process, procedure, and proceedings in the suit here provided for shall be as provided for in sections one, two, and three of this act.

Act of 1892. 27 Stat. 86.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That the Shawnee tribe or band of Indians, whose claims and demands against the Cherokee Nation and the United States were referred to the United States Court of Claims for adjudication under the act of Congress passed and approved October first, eighteen hundred and ninety, entitled " An act to refer to the Court of Claims certain claims of the Shawnee and Delaware Indians and the freedmen of the Cherokee Nation, and for other purposes," shall present to the said court all their claims against the United States and the Cherokee Nation, or against either or both of them, of every description whatsoever, arising out of treaty relations with the United States, rights growing out of such treaties, and from contracts, expressed or implied, under such treaties, made and entered into by and between the said Shawnees and Cherokees, and between them, or either of them and the United States.

are set apart and appropriated in the third article hereof. All Shawnees who have sustained damage by the emigration of citizens of the United States, or by other acts of such citizens, shall, within six months after the ratification of this treaty, file their claims for such damages, with the Shawnee agent, to be submitted by him to the Shawnee council for their action and decision, and the amount, in each case, approved, shall be paid by the said agent: *Provided*, The whole amount of claims thus approved, shall not exceed the said sum stipulated for in this article: *And provided*, That if such amount shall exceed the sum, then a reduction shall be made, *pro rata*, from each claim, until the aggregate is lowered to that amount. If less than that amount be adjudged to be due, the residue, it is agreed, shall be appropriated as the council shall direct."

"ARTICLE 14. The Shawnees acknowledge their dependence on the Government of the United States, and invoke its protection and care. They will abstain from the commission of depredations, and comply, as far as they are able, with the laws in such cases made and provided, as they will expect to be protected, and to have their rights vindicated."

Section 2154 of the Revised Statutes, which is part of the act of June 30, 1834, 4 Stat. 731, reads as follows :

" SEC. 2154. Whenever, in the commission, by a white person, of any crime, offence, or misdemeanor, within the Indian country, the property of any friendly Indian is taken, injured, or destroyed, and a conviction is had for such crime, offence, or misdemeanor, the person so convicted shall be sentenced to pay to such friendly Indian to whom the property may belong, or whose person may be injured, a sum equal to twice the just value of the property so taken, injured, or destroyed."

Section 2155 of the Revised Statutes, which is also part of the act of June 30, 1834, 4 Stat. 731, reads as follows:

· " SEC. 2155. If such offender shall be unable to pay a sum at least equal to the just value or amount, whatever such payments shall fall short of the same shall be paid out of the Treasury of the United States. If such offender cannot be apprehended and brought to trial, the amount of such property shall be paid out of the Treasury. But no Indian shall be entitled to any

payment out of the Treasury of the United States, for any such property, if he, or any of the nation to which he belongs, have sought private revenge, or have attempted to obtain satisfaction by any force or violence."

It is also stated that at the time the property was taken the Indians were in amity with and had always been loyal to the United States. Judgment was asked in favor of the Indians mentioned for the respective sums set opposite their names, and that ten per centum of the amount might be allowed the attorneys for their services.

*Mr. John C. Chaney* and *Mr. Alphonso Hart* for appellant.

*Mr. Assistant Attorney General Pradt* and *Mr. Special Attorney Button* for appellee.

MR. JUSTICE PECKHAM, after making the foregoing statement of facts, delivered the opinion of the court.

The duty of this court is simply to construe the acts of Congress of 1890 and 1892. The Court of Claims has no jurisdiction of the subject matter of this petition, unless it is conferred by one or the other of the above acts. The moral obligations of the Government toward the Indians, whatever they may be, are for Congress alone to recognize, and the courts can exercise only such jurisdiction over the subject as Congress may confer upon them.

Upon examination of the act of 1890, it appears that jurisdiction is conferred upon the Court of Claims to hear and determine what are the just rights in law or in equity of the Shawnee and Delaware Indians, who are settled and incorporated into the Cherokee Nation, under the provisions of article 15 of the treaty of 1866, between the United States and the Cherokee Nation, and also under articles of agreement between the Cherokee Nation and the Shawnee Indians, made June 7, 1869, and articles of agreement made with the Delaware Indians, April 8, 1867, and also of the Cherokee freedmen settled, etc., under provisions of article 9 of the treaty of 1866.

The language of the first section, in our opinion, confers jurisdiction upon the Court of Claims to hear and determine the rights in law or equity of the tribes of the Shawnee or Delaware Indians, arising out of the subject matter provided for in the subsequent parts of the act, and there is no grant of jurisdiction to hear or determine the rights of individual members of those tribes. It is true the statute speaks of the Shawnee and Delaware Indians, but the words Shawnee and Delaware Indians mean the tribes and not individual members of those tribes of Indians. The rights must be those which arise out of the subject matter which is referred to in sections 2, 3 and 4 of the act. This is stated in terms in the first section. The subsequent sections of the act show, as we think, that Indian tribes and not individual members thereof are intended. And no jurisdiction is granted to hear claims such as are included in this case, whether they are made by tribes or by individual members of a tribe.

The second section permits a suit against the Cherokee Nation and the United States Government to recover from the Cherokee Nation moneys due and unpaid to the Shawnees, etc., which the Cherokee Nation have before paid out, or may hereafter pay per capita in the Cherokee Nation and which the Cherokee Nation had refused or neglected to pay to the other Indians. The suits are in reality against the Cherokee Nation, and the recovery is from that nation. The separate or joint suit mentioned in this section is a separate or joint suit of the tribes and of the freedmen, and not of the individual members thereof. In either event it does not include such a case as this.

Section 3 permits the bringing of " the said suit or suits " in the name of the principal chief or chiefs of the said Shawnee and Delaware Indians, and for the freedmen in their behalf and for their use, in the name of some person as their trustee, to be selected by them with the approval of the Secretary of the Interior. The exercise of this jurisdiction is not to be barred by any lapse of time heretofore, nor are the rights of the Indians to be impaired by any acts passed and approved by the Cherokee National Council. The right given by the third section is to commence a suit or suits which had already

been spoken of in the second section of the act. The second section gave no right to commence this suit, as we have seen. Neither section includes the rights of individual Indians.

A perusal of section 4 shows that the right to bring a suit against the United States, therein provided for, was limited to the purpose of collecting from the United States Government any amount of money that in law or equity may be due from the United States " to said tribes in reimbursement for their tribal fund for money wrongfully diverted therefrom." We think that individual Indians had no right to commence such an action as this under the act of 1890, even though it be assumed that the tribe had such right under that act for the recovery of the value of property taken from the tribe. Such a suit, as the one before us, is plainly not included in the grant of jurisdiction in this section.

By the act of 1892, it is provided that " the Shawnee tribe or band of Indians, whose claims and demands against the Cherokee Nation and the United States were referred to the United States Court of Claims for adjudication," (under the act of 1890,) " shall present to the said court all their claims against the United States and the Cherokee Nation," etc.

The result is that this act does not grant jurisdiction to the Court of Claims to hear and decide the questions arising under this petition. The grant of jurisdiction is to hear and determine all the claims of the Shawnee tribe or band of Indians.

The claims are those of a tribe or band, and not those of the individual members of Shawnee tribe or band. The reference in the act of 1892 shows that Congress assumed that whatever their nature, it was the claims of the Shawnee tribe or band that had been referred to the Court of Claims for adjudication by the act of 1890, and not claims of the individual members thereof. The act of 1892 enlarges the scope of the act of 1890 so as to include all claims of the tribe or band, instead of claims of the nature provided for in sections 2, 3 and 4 of the act of 1890, but the claims must be claims of a band and not of an individual.

These acts have been before this court on a previous occasion.

In *United States* v. *Blackfeather*, 155 U. S. 180, 194, Mr. Justice Brown, speaking for the court, said :

" While there may be a moral obligation on the part of the Government to reimburse the money embezzled by the Indian superintendent, and in fact an appropriation appears to have been made for that purpose, act of July 7, 1884, c. 334, 23 Stat. 236, 247, it is by no means clear that, under the acts of 1890 and 1892, the Shawnees were authorized to recover and collect from the Government any other moneys than those which they claimed in their tribal relation or capacity. The money in question is not due the tribe as such, but to certain individual orphans, who claim to have been defrauded. But whether this be so or not, there is nothing in the record to indicate how much of this money was embezzled by the guardians created by the Indian council, and how much by the Indian superintendent, so that there is in reality no basis for a decree in their favor."

While the question in issue here was, as is seen, not decided in the above case, yet the expression contained in the opinion shows the court was not prepared to hold that the acts embraced claims of individual Indians.

As these statutes extend the jurisdiction of the Court of Claims and permit the Government to be sued for causes of action therein referred to, the grant of jurisdiction must be shown clearly to cover the case before us, and if it do not, it will not be implied. Statutes of this nature extending the right to sue the Government will generally be strictly construed. We concur with the following remarks of Judge Weldon, contained in the opinion delivered by him in this case in the Court of Claims :

" The act of 1892, seems to have been enacted for the purpose of enlarging the scope of the right given under the act of 1890. But is it sufficiently broad to embrace the individual right of each Indian who may have suffered a depredation at the hands of the persons alleged ?

" The statute (1890) is entitled ' An act to refer to the Court of Claims certain claims of the Shawnee and Delaware Indians and the freedmen of the Cherokee Nation, and for other purposes,' and provides, in substance, that they shall present to the

said court all their claims against the United States and the Cherokee Nation, or against either or both of them, of any description whatsoever arising out of treaty relations with the United States, rights growing out of such treaties, and from contracts, express or implied, under such treaties made and entered into by and between the said Shawnees and Cherokees, and between them, or either of them, and the United States.

"The right to sue, by the phraseology of this statute, is in the assertion of rights growing out of treaties, and for contracts, express or implied, under treaties made and entered into by and between the said Shawnees, Cherokees, and the United States. Can it be said that there has been a treaty, a contract, express or implied, between the United States and the individual Indians, who, though the medium of the principal chief, are now prosecuting these claims?

" The attention of the court is called to the fourteenth article, (of the treaty of 1854,) which provides that 'The Shawnees acknowledge their dependence on the Government of the United States, and invoke its protection and care. They will abstain from the commission of depredations, and comply, as far as they are able, with the laws in such cases made and provided, as they will expect to be protected and to have their rights vindicated.' Does this phraseology establish contractual or treaty relations, having the effect of contracts, with each individual Indian composing the Shawnee tribe? Or, rather, is it not a general clause, limited in its effect to the parties to the treaty, to wit, the United States on one side and the Shawnee tribe upon the other?

" The plaintiff, by the allegations of the petition, has asserted an individual obligation existing between the United States and each of the claimants, and in order to recover it must appear that such a relation exists.

" The United States, as the guardian of the Indians, deal with the nation, tribe, or band, and have never, so far as is known to the court, entered into contracts, either express or implied, compacts, or treaties with individual Indians so as to embrace within the purview of such contract or undertaking the personal rights of individual Indians.

"The acts of Congress referred to by the allegations of the petition and the argument of counsel for the claimant, are not applicable to the claim made by this petition. The condition upon which remuneration to the Indian is to be made under section 2154, Revised Statutes, is not shown to exist in this case. And so it may be said of section 2155 of Revised Statutes, that the condition upon which the Indian is entitled to remuneration out of the Treasury is not shown to exist in the claims made in this proceeding.

"The act of 1892 specifies that the Shawnee tribe or band of Indians, whose claims and demands against the Cherokee Nation and the United States were referred to the United States Court of Claims for adjudication under the act of Congress passed and approved October 1, 1890, shall present to said court all their claims against the United States. The claims referred to this court under the act of 1890 were the claims of the Shawnee tribe or band of Indians, and not the personal claims of the individual Indians belonging to said tribe or band of Shawnees.

"The evident object of the act of 1892 was to enlarge the jurisdiction of this court with reference to the same class of claims as were cognizable under the act of 1890, to wit, the claims of the Shawnee tribe or band of Indians."

We think it clear that no jurisdiction over this case is granted by the language of the sections of the Revised Statutes above referred to.

We see nothing in the act, approved May 9, 1860, 12 Stat. 15, appropriating moneys "for the payment of claims of certain members of the Shawnee tribe of Indians," which affects the conclusion we have reached that the acts of 1890 and 1892 refer to tribes and not individuals. The act of 1860 appropriates, in terms, money to pay claims of certain members of the tribe. It is apparent that when Congress intends to include individuals as distinct from tribes, it does not speak of them as Shawnee Indians, but as "certain members" of the Shawnee tribe.

Congress may, of course, at its pleasure, still confer jurisdiction upon the Court of Claims in such terms as shall, without

doubt, cover claims of the nature set forth in this record. In our judgment it has not done so as yet. The judgment of the Court of Claims must be

*Affirmed.*