**FLETCHER v. UNITED STATES.**

**Customs Appeal No. 4088.**

Court of Customs and Patent Appeals.

Nov. 22, 1937.

Lamb & Lerch, of New York City (John G. Lerch, of New York City, of counsel), for appellant.

Joseph R. Jackson, Asst. Atty. Gen. (Charles J. Miville, Sp. Atty., and James F. Donnelly, Jr. Atty., both of New York City, of counsel), for the United States.

Lawrence Berenson, of New York City, for the Republic of Cuba and Cuban Chamber of Commerce in the United States, Inc., amici curiæ.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

The appellant imported at the port of New York 42 crates of pineapples which were assessed for duty by the collector at 20 cents per crate of 2.45 cubic feet under paragraph 747, Schedule 7, § 1, of the Tariff Act of 1930 (19 U.S.C.A. § 1001, Schedule 7, par. 747), as modified by the trade agreement entered into between the United States and the Republic of Cuba on August 24, 1934 (T.D. 47232, 66 Treas.Dec. 189). The said trade agreement was made pursuant to the provisions of the so-called Reciprocal Trade Agreement Act of June 12, 1934, 48 Stat. 943, § 1 (section 350 of the Tariff Act of 1930, as amended, 19 U.S.C.A. § 1351).

Within the statutory time limit, appellant protested the assessment of duty and claimed that the pineapples were dutiable at a higher rate of duty, to wit, 50 cents per crate of 2.45 cubic feet under said paragraph, basing his claim upon the contention that the said Reciprocal Trade Agreement Act is unconstitutional and that the trade agreement entered into between the United States and Cuba is therefore invalid.

At the trial below the government moved to dismiss the protest on the ground that the court had no jurisdiction to entertain the same inasmuch as it claimed a higher rate of duty than that which the collector had applied. The court sustained the motion and, after a petition for rehearing was denied, appeal was taken here from the court's judgment.

Among the errors assigned requiring consideration here are the following: That the trial court erred in dismissing the protest; and that it erred in denying the motion for rehearing.

One of the reasons which prompted the court below in dismissing the protest was that since the protestant was complaining about the assessment of a lower rate than he thought applicable he had not shown in his protest such an interest or that he had sustained such a damage as was necessary to entitle him to a review of the action of the collector, citing Massachusetts v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078. In the petition for rehearing the appellant set out that he was prepared to testify, if the rehearing were granted, that the action of the collector in applying the provisions of the said trade agreement resulted in damage to the American industry of raising and selling pineapples and resulted in damages to him personally since he was such a producer.

At the outset it should be mentioned that the so-called Reciprocal Trade Agreement Act, supra, § 2 (19 U.S.C.A. § 1352) definitely provides that "The provisions of sections 336 and 516(b) of the Tariff Act of 1930 [1336 and 1516(b) of this title] shall not apply to any article with respect to the importation of which into the United States a foreign trade agreement has been concluded pursuant to this Act [Part III of this subtitle], or to any provision of any such agreement."

Thus the record shows that the appellant, an American producer, having been denied the right to protest under said section 516(b) of the Tariff Act of 1930 (19 U.S.C.A. § 1516(b), seeks to raise the same question by protesting as an importer the action of the collector in assessing a lower rate than would have been applicable had the trade agreement not been entered into.

It is conceded by all parties that the question of the constitutionality of the so-called Reciprocal Trade Agreement Act, supra, is not presented for decision here, and that the sole question is one involving the jurisdiction of the United States Customs Court under section 514 of the Tariff Act of 1930 (19 U.S.C.A. § 1514) to entertain the protest of the appellant.

Appellant's contention that the trial court had jurisdiction to review the action of the collector is based primarily upon the decision of this court in United States v. Schwartz & Co., 3 Cust.App. 24, T.D. 32315. The protest there being considered was filed under subsection 14 of section 28 of the Tariff Act of 1909 (36 Stat. 91, 100), which reads in part as follows: "[the importer may] *if dissatisfied* with such decision, give notice in writing to the collector, setting forth therein distinctly and specifically, and in respect to each entry or payment, the reasons for his objections thereto." (Italics ours.)

In that case, which will be more fully discussed hereinafter, the court held, by a divided opinion, that an importer of merchandise could contest by protest a rate of duty as being too low.

When paragraph N of section 3 of the Tariff Act of 1913 (38 Stat. 187), relating to protests, was enacted, the language of the above quoted provision of the Tariff Act of 1909 was changed to read as follows: "[the importer may] *if dissatisfied with such decision imposing a higher rate of duty, or a greater charge, fee, or exaction, then he shall claim to be legally payable,* file a protest or protests in writing with the collector, setting forth therein distinctly and specifically, and in respect to each entry or payment, the reasons for his objections thereto." (Italics ours.)

It will thus be seen that in the Tariff Act of 1913 the protest provision was limited to claims that arose because of an exaction which was claimed to be too high.

The Supreme Court of the United States in Louisiana v. McAdoo, 234 U.S. 627, 34 S.Ct. 938, 58 L.Ed. 1506, in discussing the said provision of the Tariff Act of 1913 stated that Congress in the enactment of the act of 1913 limited the protest to a rate of duty which was claimed to be too high because the decision of this court in the Schwartz Case, supra, did not meet with approval.

Section 514 of the Tariff Act of 1922, 42 Stat. 969, which changed the language of the protest sections in the said two previous acts, reads in part as follows: "unless the importer, consignee, or agent of the person paying such charge or exaction, or filing such claim for drawback, or seeking such entry or delivery, shall, within sixty days after, but not before such liquidation or decision, as well in cases of merchandise entered in bond as for consumption, file a protest in writing with the collector setting forth distinctly and specifically, and in respect to each entry, payment, claim, or decision, the reasons for the objection thereto."

The language of section 514 of the Tariff Act of 1930 (19 U.S.C.A. § 1514), under which section this action is brought, is identical in its material provisions with its predecessor paragraph under the same number in the Tariff Act of 1922.

Upon the above statement of the history of the contested provision, the importer makes the following contentions: "* * * We submit that had not Congress intended to broaden the remedy and to remove the restriction it imposed in the Act of 1913, it would have carried in the subsequent reenactments of section 514 the limitation imposed by it in the Tariff Act of 1913. In other words, it would be to impute to Congress a futile act when it removed the restriction if we did not give to it an intent to broaden the remedy. The following cases, we think, bear materially upon this construction: [citing Shriver v. Woodbine Savings Bank, 285 U.S. 467, 52 S.Ct. 430, 76 L.Ed. 884, and United States v. Babcock et al., 250 U.S. 328, 39 S.Ct. 464, 63 L.Ed. 1011]."

It is the position of the government, and of counsel for the Republic of Cuba and the Cuban Chamber of Commerce in the United States, Inc. (the latter as amicus curiæ), and substantially that of the trial court, first, that appellant has complained of no injury or damage to himself which entitled him to relief by protest under said section 514; second, that the context of the provisions hereinbefore quoted would indicate that Congress, in the enactment of the Tariff Acts of 1913, 1922, and 1930, never intended to give an American producer the right to protest a lower rate except in the last two acts where it is specially provided for under the said American producer's provision (section 516). It is further argued in substance that the fact that Congress has made inapplicable a right which formerly existed in the producer to protest a lower rate of duty by amending the Tariff Act of 1930 conclusively shows that it was not the legislative intent to permit a producer to protest any action of the collector under the provisions of the Reciprocal Trade Agreement Act.

The first question to be considered is the important one as to whether or not the case of United States v. Schwartz &

Co., supra, is controlling of the decision at bar, especially in view of the above referred to subsequent legislation.

We think the decision in that case has little, if any, relevancy to the issues here presented. We will first call attention to certain facts existing in that case which are not present in the one at bar. The ultimate question there was the proper classification of bagging for cotton. The rate to be applied, when the merchandise was properly classified, was not in dispute. In the instant case the correctness of the classification is not in dispute, but the rate of duty is disputed. In the Schwartz Case it was conceded that the classification of the bagging as being composed of jute, etc., under paragraph 355 of the Tariff Act of 1909 (36 Stat. 51) was erroneous, and that it should have been classified under paragraph 358 (36 Stat. 51). No such concession is made here. As is above pointed out the protest provisions of the Tariff Act of 1909 authorized an importer to protest "if dissatisfied" and to set forth "the reasons for his objections thereto." The Tariff Act of 1930 which we now have under consideration contains no such term as "if dissatisfied," but authorizes a protest against the rate of duty assessed by the collector and requires that the importer set forth "the reasons for the objection thereto." Section 514 (19 U.S.C.A. § 1514).

The majority opinion in the Schwartz Case was prompted chiefly by a consideration of the meaning to be given to the term "dissatisfied." The opinion stated: "It thus appears that the single ultimate question presented by the record is whether or not the importers came within the description 'dissatisfied' within the meaning of the above-cited provision for appeals. If they came within that description they had the right to appeal; otherwise they had no such right."

Then the court, after citing certain authorities relating to the meaning of the term "dissatisfied," held that the importer had brought itself within the provision and was therefore entitled to protest the assessment by the collector of a rate which was regarded as being too low. It is thus seen that the chief reason which brought the majority of the court to its conclusion is absent from the case at bar. Furthermore, in the Schwartz Case the court pointed out that under the 1909 Tariff Act, the liquidation of the collector was binding upon the importer unless he protested (within fifteen days) but that such liquidation was not conclusive upon the government and that the collector might reliquidate at any time, certainly within one year after the original liquidation. It was, in effect, pointed out that where the importer paid an insufficient amount of duty the goods might be promptly disposed of after which the collector might reliquidate and apply a higher rate, thus resulting in such uncertainty as would suggest the right of the importer to try the issue out when a rate too low was levied.

It is important to note that another element in the instant case was not present in the Schwartz Case. Section 515 of the Tariff Act of 1930 (19 U.S.C.A. § 1515) which is closely related to section 514 (19 U.S.C.A. § 1514), states: "Upon the filing of such protest the collector shall within ninety days thereafter review his decision, and may modify the same in whole or in part and thereafter *remit or refund any duties, charge, or exaction found to have been assessed or collected in excess, or pay any drawback found due.*" (Italics ours.)

In subsection 14 of section 28 in the Tariff Act of 1909 (36 Stat. 91, 100), involved in the Schwartz Case, the direction is that after the protest and decision of the board is made the collector or person acting as such "shall liquidate the entry accordingly."

In the Tariff Act of 1922, as a means of protecting American manufacturers, producers, or wholesalers, Congress provided that they should have the right to protest the assessment by the collector of a rate of duty which was believed to be erroneous. This, of course, included a rate which was regarded as being too low. Definite provisions in section 516 (42 Stat. 970) were made to that effect. In the Tariff Act of 1930 substantially the same provision as far as is material here was re-enacted. In 1934 Congress expressly withdrew the right of the so-called American producer to protest in event of a rate having been fixed by virtue of the so-called Reciprocal Trade Agreement Act. Obviously, by its express amendment of the 1930 act, it did not intend that the producer could do indirectly what it denied him the right to do directly. If a producer, such as the appellant, could make an importation and accomplish the same purpose by protesting the rate fixed under the amended

Tariff Act of 1930, the amendment to the act would amount to a nullity.

It is reasonable to conclude from all the facts heretofore cited that Congress at no time since the enactment of the Tariff Act of 1913 intended that an *importer* might protest a rate of duty as being too low, and certainly its amendment of the Tariff Act of 1930 in the manner above stated would not suggest that it contemplated that a right existed in an American producer to import goods and then challenge the correctness of a lower rate of duty than that which is claimed to be proper.

Much in the briefs of the government and amicus curiæ is devoted to the question of the lack of interest of or damage to the protestant. Both briefs take the position, generally speaking, that one may not institute a suit against the government, even though the government upon certain terms has agreed to be sued, and raise the question of the constitutionality of an act, unless he has suffered or is liable to suffer an injury that is peculiar to him and not one which is common to people generally, and, in substance, that the injury must result to him directly from the act of the collector of which he complains. A great number of authorities relating to this phase of the case are cited and discussed in the briefs of the government and amicus curiæ. In view of our conclusion on the other phase of the case which we have discussed somewhat at length, we think it is unnecessary for us to further refer to this line of cases.

There is nothing in the plain wording of the protest provisions of the Tariff Act of 1930 which we think is susceptible of a construction which would bring about the result which the appellant contends for. Statutes which grant the right to sue the United States will generally be strictly construed. Blackfeather v. United States, 190 U.S. 368, 23 S.Ct. 772, 47 L.Ed. 1099. The history of the legislation and the purpose of the same convinces us, as is above stated, that since the enactment of the Tariff Act of 1913 it was never the intent of the Legislature in the enactment of any of its tariff provisions to authorize any one except an American producer, etc., to protest against a rate of duty which was claimed to be too low. This being true, it follows that both assignments of error, which relate to the ruling of the trial court on the motion to dismiss and the petition for rehearing, are without merit, and the judgment of the United States Customs Court is affirmed.

Affirmed.

GRAHAM, Presiding Judge, sat during the argument of this case, but died before the opinion was prepared.