Michelle LOUIS, Individually and as
Personal Representative of Chelsey
B. Louis, Deceased, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civil No. 96–1161 BB/DJS.

United States District Court,
D. New Mexico.

June 10, 1997.

James S. Bromberg, Albuquerque, NM, for Plaintiff.

Marilyn S. Hutton, Asst. U.S. Atty., Albuquerque, NM, for Defendant.

## MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

BLACK, District Judge.

THIS MATTER is before the Court on Plaintiff's motion to render a summary judgment declaring that the Acoma Tribal Court has jurisdiction over this dispute. Having reviewed the briefs of counsel[1] and being otherwise duly advised, the Court finds Plaintiff's motion is not well taken and it should be Denied.

### Discussion

The Acoma–Canoncito–Laguna Indian Hospital ("ACLIH") is operated by the United States and is located on the Acoma Pueblo. During the course of her pregnancy, Plaintiff, Michelle Louis, sought and received medical care at the ACLIH. Plaintiff gave birth to Chelsey Louis on November 13, 1994. Plaintiff and Chelsey Louis both sought and received medical care at ACLIH on November 16, 1994. Plaintiff maintains federal employees at ACLIH were negligent in their diagnosis and medical care and as a result Chelsey Louis died of an overwhelming infection on November 18, 1994.

Plaintiff filed a complaint for medical negligence and wrongful death against the United States in the United States District Court for the District of New Mexico on April 9, 1996. This complaint was subsequently dismissed without prejudice under Federal Rule of Civil Procedure 41. On June 25, 1996, Plaintiff filed a complaint for medical negligence and wrongful death against the United States in the Acoma Tribal Court. Maintaining that the Acoma Tribal Court did not have jurisdiction over this case, the Defendant United States declined to appear in the Tribal Court. The Acoma Court nonetheless took jurisdiction of the case, and scheduled a hearing on the merits. The United States again declined to appear in Tribal Court. On October 11, 1996, the Acoma Tribal Court rendered a decision in favor of Plaintiff and has apparently now entered a judgment against the United States in the amount of $1,991,770.00.

Plaintiff asks this Court to enter summary judgment and declare that "as a matter of comity [this Court should] abstain from rendering judgment" and instead should defer to the Acoma Tribal Court until all tribal court remedies have been exhausted. Plaintiff misconceives the role and scope of tribal

---

1. This opinion was in draft form before the Southern Ute Tribe filed its motion to participate as amicus. Given the rather clear state of the law, the Court does not believe the participation of amicus would be useful and the motion of the Southern Ute Tribe will be denied.

jurisdiction, especially as it relates to the United States.

 Historically, the doctrine of sovereign immunity served as an absolute bar to recovery by those who suffered injury or loss as a result of the tortious acts of employees of the United States. *United States v. Dalm,* 494 U.S. 596, 608, 110 S.Ct. 1361, 1368, 108 L.Ed.2d 548 (1990); *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769–70, 85 L.Ed. 1058 (1941). This immunity has often been invoked to block claims by Native Americans against the United States. *See, e.g., Affiliated Ute Citizens v. United States,* 406 U.S. 128, 141–42, 92 S.Ct. 1456, 1466–67, 31 L.Ed.2d 741 (1972); *Blackfeather v. United States,* 190 U.S. 368, 373, 23 S.Ct. 772, 774, 47 L.Ed. 1099 (1903); *United States v. White Mountain Apache Tribe,* 784 F.2d 917, 920 n. 10 (9th Cir.1986). The threshold question in any suit in which the United States is a defendant, then, must be whether Congress has specifically waived sovereign immunity. *Taylor v. United States,* 590 F.2d 263 (8th Cir.1979). Any such waiver of sovereign immunity must be expressed in a specific congressional authorization for such a claim. *Garcia v. United States,* 666 F.2d 960, 966 (5th Cir.), *cert. denied,* 459 U.S. 832, 103 S.Ct. 73, 74 L.Ed.2d 72 (1982). A corollary to the immunity doctrine is that the United States can define the conditions under which legal actions are permitted against it. *Honda v. Clark,* 386 U.S. 484, 87 S.Ct. 1188, 18 L.Ed.2d 244 (1967). Consequently, a party instituting suit against the United States must bring the case within a specific Act of Congress before the Court has jurisdiction. *United States v. Clarke,* 33 U.S. (8 Pet.) 436, 8 L.Ed. 1001 (1834); *Lunsford v. United States,* 570 F.2d 221 (8th Cir.1977).

 Plaintiff relies upon the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2679(b)(1) as one basis for her claim. Section 1346(b) of the FTCA clearly defines the jurisdictional grant to federal courts to entertain suits brought against the United States sounding in tort: "[T]he *district courts ... shall have exclusive jurisdiction* of civil actions on claims against the United States...." 28 U.S.C. § 1346(b) (emphasis added). The terms of its consent as set forth expressly and specifically by Congress thus define the parameters of subject matter jurisdiction under the FTCA. *See United States v. Orleans,* 425 U.S. 807, 814, 96 S.Ct. 1971, 1975–76, 48 L.Ed.2d 390 (1976); *Dalehite v. United States,* 346 U.S. 15, 30–31, 73 S.Ct. 956, 965–66, 97 L.Ed. 1427 (1953); *Sherwood,* 312 U.S. at 590–91, 61 S.Ct. at 771–72; *see also Baird v. United States,* 653 F.2d 437 (10th Cir. 1981), *cert. denied,* 454 U.S. 1144, 102 S.Ct. 1004, 71 L.Ed.2d 296 (1982). A suit brought under the FTCA in a court not specified in the Act is therefore subject to dismissal. *See, e.g., Martinez v. Seaton,* 285 F.2d 587, 589 (10th Cir.), *cert. denied,* 366 U.S. 946, 81 S.Ct. 1677, 6 L.Ed.2d 856 (1961); *Strick Corp. v. United States,* 223 Ct.Cl. 262, 625 F.2d 1001, 1010 (1980) (Court of Claims has no pendent jurisdiction over a suit under the FTCA).

Rather than providing an express grant of subject matter jurisdiction to the Acoma Tribal Court, then, the FTCA clearly contemplates jurisdiction over such disputes only in federal district courts. The critical limitation specified in the FTCA is that exclusive jurisdiction is granted to "the district courts." 28 U.S.C. § 1346(b). "The term 'district court of the United States' standing alone includes only the constitutional courts." *Mookini v. United States,* 303 U.S. 201, 205, 58 S.Ct. 543, 545, 82 L.Ed. 748 (1938). A "district court is a court constituted by Chapter 5 of Title 28." 28 U.S.C. § 451. As stated in 28 U.S.C. § 132,

(a) There shall be in each judicial district a district court which shall be a court of record known as the United States District Court for the district.

(b) Each district court shall consist of the district judge or judges for the district in regular active service.

New Mexico has but one judicial district and but one "district court." 28 U.S.C. § 111. As the Acoma Tribal Court is not a "district court" as defined by the FTCA, it has no jurisdiction over Plaintiff's claims. *See Blue Legs v. United States Bureau of Indian Affairs,* 867 F.2d 1094, 1098 (8th Cir.1989) (tribal court not a "district court" under RCRA; therefore exhaustion of tribal remedies not appropriate); *Wells v. United*

*States*, 214 F.2d 380 (5th Cir.), *cert. denied*, 348 U.S. 855, 75 S.Ct. 80, 99 L.Ed. 674 (1954) (Canal Zone not a "district court" and thus no jurisdiction under FTCA).

█ In addition to her tort claim, Plaintiff argues she is entitled to a declaratory judgment. In order to receive this relief, however, Plaintiff must assert some separate grant of jurisdiction. *See United States v. King*, 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969). The Declaratory Judgment Act does not provide a source of jurisdiction that is independent of substantive federal law. *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 16–17 n. 14, 103 S.Ct. 2841, 2849–50 n. 14, 77 L.Ed.2d 420 (1983). Accordingly, the district court's power to grant declaratory relief must lie in some independent basis of federal subject matter jurisdiction. *Amalgamated Sugar Co. v. Bergland*, 664 F.2d 818, 822 (10th Cir.1981). Thus, because the Declaratory Judgment Act provides neither a separate grant of jurisdiction nor a separate waiver of sovereign immunity, *see Robishaw Eng'g, Inc. v. United States*, 891 F.Supp. 1134, 1142 (E.D.Va.1995), it cannot provide the foundation for the relief sought by Plaintiff.

█ Rather than provide citation to an express congressional grant of tribal court jurisdiction over this type of claim against the United States, Plaintiff asserts, "Acoma Tribal Court has presumptive subject matter jurisdiction in this case." (Pl.'s Mot.Summ.J. & Br.Supp. at 4). The United States Supreme Court recently rejected this premise in *Strate v. A–1 Contractors*, — U.S. —, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997). In *Strate*, a unanimous Court made it clear that tribal court jurisdiction over nonmembers was not presumptive and certainly not preemptive of federal jurisdiction. After noting that although both the non-Indian litigants in *Strate* had some unrelated ties to the Tribe, and that the dispute arose out of an accident on a state highway within the exterior boundaries of the Fort Berthold Reservation, the Court observed that "when tribal-court jurisdiction over an action such as this one is challenged in federal court otherwise applicable exhaustion requirement, *see supra* at ——————, 117 S.Ct. at 1410–

11, must give way for it would serve no purpose other than delay." *Id.* at —— n. 14, 117 S.Ct. at 1416 n. 14. Rather, the Court found its earlier decision in *National Farmers Union Insurance Cos. v. Crow Tribe*, 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985), did not express "anything more than a prudential exhaustion rule in deference to the capacity of tribal courts 'to explain to the parties the precise basis for accepting [or rejecting] jurisdiction.'" *Strate*, — U.S. at ——, 117 S.Ct. at 1411 (quoting *National Farmers*, 471 U.S. at 857, 105 S.Ct. at 2454). Writing for the unanimous Court, Justice Ginsburg started with the premise "[o]ur case law establishes that, absent express authorization by federal statute or treaty, tribal jurisdiction over the conduct of nonmembers exists only in limited circumstances." *Id.* at ——, 117 S.Ct. at 1409. She then set forth the boundaries for tribal jurisdiction over nonmembers:

> As to nonmembers, we hold, a tribe's adjudicative jurisdiction does not exceed its legislative jurisdiction. Absent congressional direction enlarging tribal-court jurisdiction, we adhere to that understanding.

*Id.* at ——, 117 S.Ct. at 1413.

Nor would the policy purpose of the exhaustion requirement be served by deferring to the Acoma Tribal Court. This Court cannot fathom in what fashion the Tribal Court's "expertise," referred to in *National Farmers*, 471 U.S. at 856–57, 105 S.Ct. at 2453–54, could assist in deciding a medical malpractice lawsuit, a genus with which this Court has almost certainly had considerably more experience than the Acoma Tribal Court. In such a situation, exhaustion of tribal remedies has generally not been required. *Altheimer & Gray v. Sioux Mfg. Corp.*, 983 F.2d 803, 814 (7th Cir.1993); *Ute Distribution Corp. v. Secretary of Interior of the United States*, 934 F.Supp. 1302, 1311 (D.Utah 1996); *Vance v. Boyd Miss., Inc.*, 923 F.Supp. 905, 908–13 (S.D.Miss.1996); *Myrick v. Devils Lake Sioux Mfg. Corp.*, 718 F.Supp. 753, 755 (D.N.D.1989); *see generally* Blake A. Watson, *The Curious Case of Disappearing Federal Jurisdiction Over Enforcement of Federal Law: A Vehicle for Reassessment of the Tribal Exhaustion/Abstention Doctrine*, 80

Marq.L.Rev. 531 (1997). Moreover, since Plaintiff apparently now has a substantial judgment against the United States, the question arises as to how the Tribe will enforce that judgment.

In addition to *National Farmers*, the *Strate* Court also recognized, and indeed focused upon, the standards previously set forth in *Montana v. United States*, 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981). Since Plaintiff argues she also meets the test for tribal jurisdiction set forth in *Montana*, this Court will now consider the exceptions to the general limitations to tribal jurisdiction over nonmembers set forth in *Montana*. The *Strate* Court outlined the *Montana* holding as follows:

> *Montana* thus described a general rule that, absent a different congressional direction, Indian tribes lack civil authority over the conduct of nonmembers on non-Indian land within a reservation, subject to two exceptions: The first exception relates to nonmembers who enter consensual relationships with the tribe or its members; the second concerns activity that directly affects the tribe's political integrity, economic security, health, or welfare.

—— U.S. at ——–——, 117 S.Ct. at 1409–10.

■■■ Plaintiff maintains she is entitled to the first exception to the *Montana* bar since the "ACL Hospital undertook the medical care of Michelle Louis and her newborn child. Thus, it entered into a relationship with tribal members." (Pl.'s Mot.Summ.J. & Br.Supp. at 6). This contention again, however, runs right into the sovereign immunity of the United States. *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351–52, 63 L.Ed.2d 607 (1980); *United States v. Testan*, 424 U.S. 392, 397–99, 96 S.Ct. 948, 952–54, 47 L.Ed.2d 114 (1976); *Sherwood*, 312 U.S. at 590, 61 S.Ct. at 771; *King*, 395 U.S. at 4, 89 S.Ct. at 1502–03. Congress has carefully crafted the parameters in which a tort suit will be permitted against the federal government. Subject matter jurisdiction cannot be expanded by the relationship, waiver, or consent of the parties. *American Fire & Cas. Co. v. Finn*, 341 U.S. 6, 17–18, 71 S.Ct. 534, 541–42, 95 L.Ed. 702 (1951); *First State Bank & Trust Co. v. Sand Springs State Bank*, 528 F.2d 350, 354 (10th Cir.1976). A waiver of sovereign immunity must derive from an Act of Congress not the mere establishment of a government hospital on reservation land. Whatever the nature of the "consensual relationship" between the Acoma Tribe and the ACLIH, it is an insufficient basis to find a waiver of government immunity for the alleged torts of federal employees. *See Azure v. United States Health & Human Servs.*, 758 F.Supp. 1382, 1387 (D.Mont.1991).

In the most recent edition, the editors of *Cohen's Handbook of Federal Indian Law* recognized this axiom of jurisdictional life on the reservation:

> The circumstance that most severely restricts tribal judicial jurisdiction is the sovereign immunity of the United States. The federal trust control over Indian property and over many other aspects of reservation life often means that the United States is a necessary or indispensable party for judicial relief, or that the only effective remedy is against a federal officer. There are a number of judicial remedies in these types of cases, but most of them are available only in the federal courts.

*Felix S. Cohen's Handbook of Federal Indian Law*, Ch. 6, § B3 at 343 (Rennard Strickland et al. eds., 1982) (footnotes omitted).

■■■ Plaintiff next argues she meets the second exception to the *Montana* rule limiting tribal jurisdiction since "[b]y definition ACL Hospital clearly engages in conduct that has a direct effect on the health and welfare of the tribe and its members." (Pl.'s Mot.Summ.J. & Br.Supp. at 6–7). "It was recognized early that Congress had plenary power to determine relations with the Indian tribes and the extent of Indian sovereignty over non-Indians." *Tenneco Oil Co. v. Sac & Fox Tribe*, 725 F.2d 572, 574 (10th Cir.1984).[2]

---

2. *See also Oliphant v. Suquamish Indian Tribe*, 435 U.S. 191, 206, 98 S.Ct. 1011, 1019–20, 55 L.Ed.2d 209 (1978); *Regulation of Traders on the Navajo Reservation*, 60 I.D. 176 (1948); *Jurisdic-* *tion of Courts and the Choctaw Nation*, 7 Op.Atty. Gen. 174 (1855). In his *Handbook of Federal Indian Law*, former Solicitor Felix S. Cohen recognized tribal courts traditionally exercised juris-

And "[t]heir incorporation within the territory of the United States, and their acceptance of its protection, necessarily divested them of some aspects of the sovereignty which they had previously exercised." *United States v. Wheeler*, 435 U.S. 313, 323, 98 S.Ct. 1079, 1086, 55 L.Ed.2d 303 (1978). While tribal regulatory jurisdiction does not derive exclusively from Congress, then, it is retained at congressional sufferance and subject to complete defeasance. *Rhode Island v. Narragansett Indian Tribe*, 19 F.3d 685, 701 (1st Cir.1994). Therefore, in spite of the second exception set forth in *Montana*, the general rule remains that "absent express authorization by federal statute or treaty, tribal jurisdiction over the conduct of nonmembers exists only in limited circumstances." *Strate*, —— U.S. at ——, 117 S.Ct. at 1409. Justice Ginsburg concluded *Strate* by observing,

> When, as in this case, it is plain that no federal grant provides for tribal governance of nonmembers' conduct on land covered by *Montana's* main rule, it will be equally evident that tribal courts lack adjudicatory authority over disputes arising from such conduct.

—— U.S. at —— n. 14, 117 S.Ct. at 1416 n. 14. In the present situation, the Acoma Pueblo has no authority to regulate the operation of the ACLIH by the United States.

Beginning in its earliest decisions, the Supreme Court outlined the difference in the nature of the sovereignty of the United States and that retained by the Indian tribes which have consistently been viewed as "dependent" sovereigns. *See, e.g., Fletcher v. Peck*, 10 U.S. (6 Cranch) 87, 3 L.Ed. 162 (1810); *Johnson v. M'Intosh*, 21 U.S. (8 Wheat.) 543, 571, 5 L.Ed. 681 (1823); *Cherokee Nation v. Georgia*, 30 U.S. (5 Pet.) 1, 8 L.Ed. 25 (1831). The Supreme Court compared the sovereignty of the two governments in the following terms:

> The United States is a sovereign nation, not suable in any court except by its own consent, and upon such terms and conditions as may accompany that consent, and is not subject to any municipal law. Its

diction over non-indians only by stipulation. *Handbook of Federal Indian Law, supra,* ch. 19,

> government is limited only by its own Constitution, and the nation is subject to no law but the law of nations. On the other hand, the Choctaw Nation falls within the description in the terms of our Constitution, not of an independent state or sovereign nation, but of an Indian tribe.

*Choctaw Nation v. United States*, 119 U.S. 1, 27, 7 S.Ct. 75, 90, 30 L.Ed. 306 (1886).

■ It logically follows from the dependent nature of tribal sovereignty that tribal courts lack the power to regulate or limit federal employees in the performance of their duties in Indian country. *United States v. Yakima Tribal Court*, 806 F.2d 853 (9th Cir.1986); *United States v. Blackfeet Tribe*, 369 F.Supp. 562 (D.Mont.1973). As the Court of Appeals for the Ninth Circuit said in rejecting a tribal court's attempt to enjoin federal employees from submitting a tribal water claim to a state court:

> The Tribe's own sovereignty does not extend to preventing the federal government from exercising its superior sovereign powers. The district court was accordingly correct in concluding that the Tribe was without authority to restrict federal officials in their conduct of official business on the Reservation. This conclusion holds regardless of the merits of the Tribe's charges that the officials were conducting their official business improperly.

*United States v. White Mountain Apache Tribe*, 784 F.2d at 920 (citations omitted). Plaintiff has failed to provide an express authorization for tribal court jurisdiction over federal employees for their alleged acts of medical malpractice and the dependent nature of tribal sovereignty does not provide a basis to subject the United States to tribal jurisdiction. It seems clear, then, that in this case the Acoma Tribal Court's "exercise of tribal sovereignty would be inconsistent with the overriding interests of the National Government." *Washington v. Confederated Colville Tribes*, 447 U.S. 134, 153, 100 S.Ct. 2069, 2081, 65 L.Ed.2d 10 (1980).

§ 6 (1942 ed.).

In conclusion, Plaintiff presents neither an adequate policy basis nor the required specific congressional waiver of sovereign immunity to allow her to sue the United States in the Acoma Tribal Court.

Now, therefore,

**IT IS ORDERED** that *Plaintiff's Motion for Summary Judgment* (# 6) is **DENIED.**