**UNITED STATES of America,
Plaintiff,**

v.

**BLACKFEET TRIBE OF the BLACK-
FEET INDIAN RESERVA-
TION et al., Defendants.**

**Civ. No. 3197.**

United States District Court,
D. Montana,
Great Falls Division.

Dec. 27, 1973.

Otis L. Packwood, U. S. Atty., Robert P. Gannon, Asst. U. S. Atty., Butte, Mont., for plaintiff.

John T. McDermott, Missoula, Mont., for defendants.

## OPINION AND ORDER

RUSSELL E. SMITH, Chief Judge.

Following the opinion on the motion for a preliminary injunction issued Oc- tober 9, 1973, a pretrial conference was held. At that time it was stipulated that the defendants might move the court to reconsider the opinion of Octo- ber 9 and that after such reconsidera- tion the court should enter a final judg- ment herein.

Defendants did not initially assert the unconstitutionality of 15 U.S.C. § 1175 but now feel required to do so by reason of the court's reliance on 15 U.S.C. § 1175 in the previous opinion. The thrust of defendant's arguments is that the federal government is a government of enumerated powers, that the only con- stitutional sources of power over Indian affairs are the war powers, the treaty powers, and the power to regulate com- merce with the Indian tribes. It is then asserted that the enactment of 15 U.S.C. § 1175 was not a proper exercise of any of these specific powers. Were the premise sound the conclusion might fol- low.

■■ Whatever may have been the source of the power of the federal gov- ernment to govern those Indian tribes found within the boundaries of the orig- inal 13 colonies, the power to govern In- dians residing outside the 13 colonies is a part of the power of the federal gov- ernment to govern the territories of the United States. In Mormon Church v. United States, 136 U.S. 1, 42–43, 10 S. Ct. 792, 802, 34 L.Ed. 481 (1890), the Supreme Court said:

> The power of Congress over the Territories of the United States is general and plenary, arising from and incidental to the right to acquire the territory itself, and from the power given by the constitution to make all needful rules and regulations respect- ing the territory or other property be- longing to the United States. It would be absurd to hold that the Unit- ed States has power to acquire territo- ry, and no power to govern it when acquired. The power to acquire terri- tory, other than the territory north- west of the Ohio River, (which be- longed to the United States at the

adoption of the Constitution,) is derived from the treaty-making power, and the power to declare and carry on war. The incidents of these powers are those of national sovereignty, and belong to all independent governments. The power to make acquisitions of territory by conquest, by treaty, and by cession, is an incident of national sovereignty. The territory of Louisiana, when acquired from France, and the territories west of the Rocky mountains, when acquired from Mexico, became the absolute property and domain of the United States, subject to such conditions as the government, in its diplomatic negotiations, had seen fit to accept relating to the rights of the people then inhabiting those territories. Having rightfully acquired said territories, the United States government was the only one which could impose laws upon them, and its sovereignty over them was complete. No State of the Union had any such right of sovereignty over them; no other country or government had any such right. These propositions are so elementary, and so necessarily follow from the condition of things arising upon the acquisition of new territory, that they need no argument to support them. They are self-evident.

The doctrine was reaffirmed in De Lima v. Bidwell, 182 U.S. 1, 196, 21 S.Ct. 743, 753, 45 L.Ed. 1041 (1901):

> But whatever be the source of this power, its uninterrupted exercise by Congress for a century, and the repeated declarations of this court, have settled the law that the right to acquire territory involves the right to govern and dispose of it.

*See also* Shively v. Bowlby, 152 U.S. 1, 14 S.Ct. 548, 38 L.Ed. 331 (1894); Kepner v. United States, 195 U.S. 100, 24 S. Ct. 797, 49 L.Ed. 114 (1904); and In-

ter-Island Steam Navigation Co. v. Hawaii, 305 U.S. 306, 59 S.Ct. 202, 83 L. Ed. 189 (1938). When the United States acquired by the Louisiana Purchase the lands now comprising the Blackfeet Indian Reservation that land became a territory of the United States, and the inhabitants of that territory, white or Indian, became subject to the laws of the United States. In United States v. Kagama, 118 U.S. 375, 6 S.Ct. 1109, 30 L.Ed. 228 (1886), the Supreme Court rejected the thought that the power to regulate crime on an Indian reservation stemmed from the commerce clause and indicated that it was found in the power to govern the territories. The Court said at p. 380, 6 S.Ct. at p. 1111:

> But this power of Congress to organize territorial governments, and make laws for their inhabitants, arises not so much from the clause in the constitution in regard to disposing of and making rules and regulations concerning the territory and other property of the United States, as from the ownership of the country in which the territories are, and the right of exclusive sovereignty which must exist in the national government, and can be found nowhere else. Murphy v. Ramsey, 114 U.S. 15, 44, 5 S.Ct. 747, 29 L.Ed. 47.

The Court then cited American Ins. Co. v. Canter, 1 Pet. 511, 542, 7 L.Ed. 242 for the proposition that the federal government has power, whatever the source, to govern in the territories.[1] The fact that the State of Montana was subsequently admitted to the Union is not important. There has never been a relinquishment of federal criminal jurisdiction over the Blackfeet Reservation.

 In my opinion the United States has police power on the Blackfeet Reservation. That power is not dependent upon specific constitutional grant

---

1. It would serve no useful purpose to cite the many criminal laws relating to reservations which have been enacted by Congress and enforced by the courts in literally thousands of cases.

and is plenary. Where the police power is found, the control of gambling is a legitimate exercise of it. Marvin v. Trout, 199 U.S. 212, 26 S.Ct. 31, 50 L. Ed. 157 (1905). 15 U.S.C. §§ 1175 and 1176 are constitutional.

 It is contended that, since the gambling devices here involved have the stamp required by 26 U.S.C. § 4401 et seq., the possessor could not be punished. The short answer to this is that, if the United States by its taxing statute has impaired its right to prosecute under 15 U.S.C. § 1175 or to confiscate under 15 U.S.C. § 1176, that is a matter between the owner or possessor of the machines and the United States to be resolved in the United States Courts and is not a matter over which the tribal court has any jurisdiction.

 I have considered the claim of judicial immunity. It applies only when judges are faced with damage suits arising out of the performance of official duty. The fact is that courts may be and are restrained from acting in excess of jurisdiction. At the federal level the main problem encountered in the injunctive relief area is the federal Anti-Injunction Act, 28 U.S.C. § 2283. Where that act is not controlling, and it does not control here because it is state courts, not tribal courts, which are protected by it, federal court injunctions do issue to restrain court actions. *See* Mitchum v. Foster, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972), and United States v. McLeod, 385 F.2d 734 (5th Cir. 1967).

The other contentions raised in the motion for reconsideration are dealt with in the opinion of October 9, 1973, which is hereby reaffirmed in full.

It is now ordered and this does order that the defendants are, and each of them is, enjoined from in any way interfering, by the issuance of orders, citations, or otherwise, with the agents of the Federal Bureau of Investigation or the United States Attorney in the enforcement of 15 U.S.C. §§ 1175 and 1176.