**UNITED STATES of America, Plaintiff-Appellee,**

v.

**WHITE MOUNTAIN APACHE TRIBE, the White Mountain Apache Tribal Court, etc., et al., Defendants-Appellants.**

**No. 85–1719.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 14, 1985.

Decided March 7, 1986.

Martin W. Matzen, U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellee.

William H. Veeder, Washington, D.C., for defendants-appellants.

Before GOODWIN, NELSON and CANBY, Circuit Judges.

CANBY, Circuit Judge:

We decide today two cases [1] in the continuing dispute over Indian rights to water from the Salt River watershed in Arizona. The defendant White Mountain Apache Tribe inhabits the Fort Apache Indian Reservation in Arizona. The headwaters of the Salt River lie within the Reservation. Currently pending before the Superior Court for Maricopa County, Arizona, is the consolidated water rights determination proceeding entitled *In re the General Adjudication of All Rights to Use Water in the Gila River System and Source, W–1 through W–4* ("W–1"). That litigation encompasses several river systems, including the Salt. The United States is a party to W–1, in part because of its role as trustee for the Tribe and holder of legal title to any water rights to which the Tribe is beneficially entitled.

As with several earlier lawsuits, this case involves, ultimately, a refusal of the Tribe to acknowledge the state court's jurisdiction to determine these water rights, at least in the first instance. The Tribe initially sought an injunction in the federal district court for the District of Columbia to prevent the federal government from filing a claim on the Tribe's behalf in W–1.[2] When that attempt proved unsuccessful, the Tribe initiated a second action in its own Tribal Court to achieve essentially the same result. On December 23, 1981, the Tribal Court issued a temporary restraining order prohibiting four employees of the United States Department of the Interior from transferring any materials or docu-

mentation to the Justice Department for filing in W–1.

On December 30, 1981, the United States brought this action in federal district court in Arizona to enjoin the Tribe from interfering, through its Tribal Court or otherwise, with any officers of the United States in the performance of their official duties, including the preparation and filing of water rights claims in W–1.

In the meantime, the United States began its own challenge to state court jurisdiction over adjudication of Indian water rights in W–1, as well as to the adequacy of the state procedures for adjudication of the issues involved. In January 1982, the government moved to dismiss itself from W–1. A separate challenge to state court jurisdiction was filed in U.S. District Court by various parties. *See In re Determination of Conflicting Rights to the Use of Water from the Salt River Above Granite Reef Dam,* 484 F.Supp. 778 (D.Ariz.1980), *rev'd,* 668 F.2d 1093 (9th Cir.1982), *reinstated,* 463 U.S. 545, 103 S.Ct. 3201, 77 L.Ed.2d 837 (1983). Notwithstanding the congressional waiver of sovereign immunity by the McCarran Amendment, 43 U.S.C. § 666,[3] some question remained concerning the power of Arizona's courts to determine Indian water rights. The federal case culminated in the U.S. Supreme Court decision in *Arizona v. San Carlos Apache Tribe,* 463 U.S. 545, 103 S.Ct. 3201, 77 L.Ed.2d 837 (1983), which held that the McCarran Amendment removed any limitation on state court jurisdiction over Indian water rights that might have been imposed by statehood Enabling Acts or general federal

---

1. The other case is a companion appeal in *White Mountain Apache Tribe v. Hodel,* 784 F.2d 921 (9th Cir.1986).

2. That case was entitled *White Mountain Apache Tribe v. Smith,* No. 81–1205 Slip Op. (D.D.C. June 23, 1981), *aff'd mem.,* 675 F.2d 1341 (D.C. Cir.1982), *cert. denied,* 463 U.S. 1228, 103 S.Ct. 3569, 77 L.Ed.2d 1410 (1983). The district court dismissed the case, concluding that it lacked jurisdiction "over the Attorney General's exercise of litigating judgment" and that the Tribe had "an adequate remedy at law in [the W–1 proceeding] subject, as it is, to potential appellate review in the United States Supreme Court."

3. The McCarran Amendment states, in relevant part:

   (a) Consent is given to join the United States as a defendant in any suit (1) for the adjudication of rights to the use of water of a river system or other source ... where it appears that the United States is the owner of or is in the process of acquiring water rights by appropriation under State law, by purchase, by exchange, or otherwise, and the United States is a necessary party to such suit....

Indian policy. *Id.* at 563–64, 103 S.Ct. at 3211–12. During pendency of the *San Carlos* appeal, proceedings in W–1 and the case at bar were stayed.[4]

Following the Supreme Court's decision in *San Carlos* and this court's subsequent decision in *Northern Cheyenne Tribe v. Adsit,* 721 F.2d 1187 (9th Cir.1983),[5] proceedings in the instant case began again in the district court. In February 1985, the court granted the government's motion for summary judgment, *United States v. White Mountain Apache Tribe,* 604 F.Supp. 464 (D.Ariz.1985), and permanently enjoined the Tribe from interfering with officers, contractors or other representatives of the United States in the performance of their official duties, on or off the Fort Apache Reservation, which relate in any way to the preparation and filing of water rights claims in W–1.[6] The Tribe appealed, claiming, as it has in all related proceedings, that the government, or its officials, had committed fraud on the Tribe by grossly understating the Tribe's legitimate water claim and had mismanaged the Tribe's valuable water resources through its participation in W–1 and otherwise. And as in the past, the Tribe "denie[d] jurisdiction in the State Court W–1 Proceedings over its reserved rights [to Salt River water]."

Because we find the Tribe had neither the jurisdiction nor the right to interfere with the official conduct of federal business by federal agents or employees, we affirm.

## DISCUSSION

The Tribe asserts here that the state courts cannot adjudicate the water rights claim because the Tribe's dispute with the Department of the Interior over its management of the Tribe's water resources is still unresolved.[7] The Tribe contends that the Tribal Court consequently was justified in enjoining specific "subordinate employees" of the Interior Department from assisting with the W–1 litigation. Because only subordinate government employees were subject to the Tribal Court order, the Tribe contends that the order was not directed to the United States or the Department of Justice and so did not bar government participation in W–1 [8] or otherwise improperly restrict the sovereign United States. We cannot agree.

The Tribe's effort to enjoin the work of any federal agent or employee in the performance of his official duties is beyond dispute an action taken against the United States itself. *See Dugan v. Rank,* 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963). Congress has not consented to such a suit. The district court was therefore correct in ruling that the action was barred by sovereign immunity. *See Larson v. Domestic and Foreign Commerce Corp.,* 337 U.S. 682, 688–89, 69 S.Ct. 1457, 1460–61, 93 L.Ed. 1628 (1949).

---

4. After *San Carlos,* the Arizona Superior Court denied the government's motion to dismiss it from W–1. The Arizona Supreme Court affirmed. *United States v. Superior Court in and for Maricopa County,* 144 Ariz. 265, 697 P.2d 658 (1985).

5. In *Adsit,* on remand from the Supreme Court's decision in *San Carlos,* we held that the federal actions should be stayed pending determination of W–1 in the state courts. We refused to rule on two issues urged by the Tribes: (1) whether state courts had jurisdiction under state law, and (2) whether the state proceedings were adequate for the adjudication of water rights. We held that the first issue was entirely a matter for the state courts, and that the second issue was appropriate for determination in the first in-

stance by the state court. See *Adsit,* 721 F.2d at 1188.

6. We note that, at about the same time, the government also complied with state court orders to file a preliminary claim for Indian water rights in W–1 by January 4, 1985, subject to amendment by supplemental claim on or before December 1, 1985.

7. This claim is discussed more directly in the companion case of *White Mountain Apache Tribe v. Hodel,* 784 F.2d 921.

8. The Tribe appears not to dispute seriously that an order of the Tribal Court purporting to bar government participation in W–1 would be invalid.

The Tribe's own sovereignty does not extend to preventing the federal government from exercising its superior sovereign powers. *See San Carlos,* 463 U.S. at 571, 103 S.Ct. at 3215 ("tribes retain ... their historical sovereignty not 'inconsistent with the overriding interests of the National Government.'") (quoting *Washington v. Confederated Tribes,* 447 U.S. 134, 153, 100 S.Ct. 2069, 2081, 65 L.Ed.2d 10 (1980)). The district court was accordingly correct in concluding that the Tribe was without authority to restrict federal officials in their conduct of official business on the Reservation. *United States v. White Mountain Apache Tribe,* 604 F.Supp. at 466; *see also United States v. Blackfeet Tribe,* 369 F.Supp. 562, 564–65 (D.Mont.1973); *United States v. Blackfeet Tribe,* 364 F.Supp. 192, 194–95 (D.Mont. 1973). This conclusion holds regardless of the merits of the Tribe's charges that the officials were conducting their official business improperly.

We likewise reject the Tribe's contention that, because the water rights claim filed by the government on the Tribe's behalf is "fraudulent," the employees covered by the Tribal Court injunction were not acting within the scope of their duties as federal officers. It is now beyond dispute that the state courts of Arizona have jurisdiction to adjudicate the water dispute at issue here. *San Carlos,* 463 U.S. at 566–70, 103 S.Ct. at 3213–15; *Northern Cheyenne Tribe,* 721 F.2d at 1188; *United States v. Superior Court in and for Maricopa County,* 144 Ariz. 265, 697 P.2d 658 (1985); *see also* 43 U.S.C. § 666; *White Mountain Apache Tribe v. Hodel,* 784 F.2d 921, 924 (9th Cir.1986). It is also clear that the federal government, as trustee for the tribes, is under an affirmative obligation to assert water claims on its beneficiaries' behalf. The fact that the Tribe does not believe the claim the government has submitted for the Tribe is in all respects proper neither divests the Arizona courts of jurisdiction nor absolves the United States of its responsibility as trustee to assert the claim it believes appropriate.[9] Only Congress, not the Tribe, can end the trust relationship. *Joint Tribal Council of the Passamaquoddy Tribe v. Morton,* 528 F.2d 370, 380 (1st Cir.1975).

Because the United States remains under a continuing obligation to present the Tribe's claim, it is clear that efforts by government agents or employees to prepare the claim are official duties. *See Armstrong v. United States,* 306 F.2d 520, 522 (10th Cir.1962). The Tribe consequently cannot thwart those official efforts. The district court had jurisdiction to determine the limits of the Tribe's power. *National Farmers Union Ins. Co. v. Crow Tribe,* — U.S. —, 105 S.Ct. 2447, 2452, 85 L.Ed.2d 818 (1985).[10] It properly concluded that the Tribe was without power and enjoined the Tribe's efforts to impede the federal government's work related to W–1.

AFFIRMED.

---

9. As we discuss more thoroughly in the companion case, *White Mountain Apache Tribe v. Hodel,* 784 F.2d 921, the Tribe is not without a forum for presenting its grievances over the government's claim for the Tribe in W–1. The Tribe itself may intervene in W–1 directly, as it has been invited to do by the state courts. By consistently refusing to make its arguments in the proper forum, the Tribe may be forfeiting its only real opportunity to acquire the water to which it contends it is entitled.

10. In *Crow Tribe,* the Supreme Court required exhaustion of tribal court remedies because the power of the tribal court to exercise jurisdiction in that case was "not automatically foreclosed." *Crow Tribe,* 105 S.Ct. at 2453. There is no point in requiring exhaustion in the present case because tribal court jurisdiction is clearly foreclosed by the sovereign immunity of the United States.