OPINION
GARY P. SULLIVAN, Chief Justice.

BRIEF FACTUAL HISTORY AND PROCEDURAL OVERVIEW

Plaintiff, a non-member Indian, filed a complaint in Tribal Court on June 6, 1996 alleging that while incarcerated in the Roosevelt County jail[2], he was sexually assaulted by his cell-mate, defendant Birthmark[3], who was a prisoner of the Bureau of Indian Affair's (BIA) being housed at the Roosevelt County jail facility under an agreement with that County. Plaintiff further alleged that all of the other1 defendants breached their duty to protect him while acting in their official capacities, under' color of law, as Sheriff, Jailers, and Roosevelt County Commissioners. Plaintiff also sued each of the defendants in their individual capacities.
On June 18, 1997, after various Motions to Dismiss, defendants filed a Motion for Leave to Join the United States of America on behalf of the BIA as a Third Party defendant. The Tribal Court, noting no opposition from the plaintiff, granted the defendants’ motion on July 15, 1997. On the same day, a third party complaint was filed by the defendants, alleging that an officer of the BIA named Alfred Lizotte had known of Birthmark’s sexual proclivities and had told one of the defendant jailers that he (Lizotte) knew that he should have taken precautionary action, but did not do so because he feared that Roosevelt County would not allow Birthmark to be incarcerated in its facility. Defendants further alleged that Lizotte’s conduct in failing to forewarn the Roosevelt County Sheriff’s office regarding Birthmark, constituted deliberate indifference and gross neglect, depriving the plaintiff of his rights under the 5th and 14th amendment of the U.S. Constitution, giving rise to liability of the United States under 42 U.S.C. § 1983.
In a separate cause of action, defendants further alleged that the deliberate indifference and gross neglect of Lizotte, as an agent of the United States, constituted intentional and/or negligent infliction of emotional distress of plaintiff and that third party defendant should be held liable for all sums recoverable by plaintiff (thus indemnifying defendants).
Defendants’ third party complaint concludes with an allegation that Lizotte’s conduct constituted actual malice and/or actual fraud, rendering the United States, *157 and its agents, liable for punitive damages in favor of plaintiff. We note that defendants’ complaint did not name Officer Li-zotte in either his official capacity nor as an individual.
On July 30, 1997, the United States Attorney for Montana, Sherry Scheel Matte-ucci, was served with the summons and complaint. On August 7, 1997, Ms. Matte-ucci wrote a letter to Judge Spotted Bird, citing several jurisdictional cases involving “Indian Country”. She concluded her letter, stating:
“The Fort Peck Tribal Court has no jurisdiction over the federal government, its agents or employees under these circumstances. I therefore ask you (sic) dismiss, on your own motion, the Third Party Complaint in Civil Cause No. 96-6-093.”
“Should you choose not to dismiss the Third Party Complaint, we will have no alternative but to seek a federal court order declaring any orders or judgments void.”
On August 13, 1997, in response to the U.S. Attorney’s letter, the defendants’ attorney wrote to Judge Spotted Bird, via facsimile:
“If the Court is inclined to take any action based upon (Matteucci’s) letter, I would appreciate the opportunity to be heard prior to the Court taking any action.”
On August 14, 1997, without any notice to the parties and without a hearing, Judge Spotted Bird issued an “ORDER OF DISMISSAL”, stating:
“The Fort Peck Tribal Court, on its own motion, hereby dismisses, with prejudice, the Third-Party Defendant, United States, upon good cause appearing, that is, the failure of jurisdiction over the United States.”
“This order is based upon the opinions rendered in United States v. Yakima Tribal Court of the Yakima Nation, 806 F.2d 853 (9th Cir.1986); United States v. White Mountain Apache Tribe, 784 F.2d 917 (9th Cir.1986); United States v. Blackfeet Tribe, 369 F.Supp. 562 (D.Mont.1973). This order is also based upon this Court’s ruling in New Medical Associates, Inc. v. Clark and Dept. of Interior and BIA, Case No. CV-P-1671-92.”

ISSUE

Immediately upon receipt of Judge Spotted Bird’s Order of Dismissal, the defendants filed a Petition for Review with this Court, citing a denial of their due process rights. We now examine the singular, issue raised by defendants:
“Whether the Tribal Court, after granting to the defendants the status of third party plaintiffs and further, granting defendants the right to join the United States as a third party defendant, denied those same defendants’ their constitutional rights of due process when the Court, on it’s own motion, and without notice or hearing, dismissed, with prejudice, the United States (third party defendant)?”

DISCUSSION

The defendants argue that the Tribal Court denied them due process of law when it dismissed the third party defendant United States on it’s own Motion, without giving the defendants an opportunity to be heard. They further argue that such dismissal, with prejudice, was particularly egregious, in that they, the defendants, “may be forever barred from . .. seeking contribution and/or indemnification from the United States of America for any liability for which it may be jointly or *158 wholly liable.” We agree with the defendants on all counts. In their Petition for Review, defendants set forth the legal definition of “with prejudice”:
“Dismissal with prejudice. An adjudication on the merits, and final disposition, barring the right to bring or maintain an action on the same claim or cause. It is res judicata as to every matter litigated.” (Black’s Law Dictionary, 5th Ed.1979, pg. 421)
It goes without saying that virtually all defendants would prefer to avoid the cost, effort and aggravation of being sued. Likewise, it is not too surprising that a defendant will make every attempt to avoid the time consuming and costly process of answering a complaint. We are convinced that if we polled lawyers regarding various methods that they have used to extricate their clients from such rigor’s, we would have a virtual panoply of masterful schemes. However, we find that a letter addressed directly to the Court demanding a dismissal is a curious approach indeed. It appears to us that a Motion filed in the subject Court, or a demand directed to the complaining parties, would have been the most appropriate approach. Further’, to warn or threaten the Court that the defendant will not appear in that Court, but rather, will go to a Federal Court seeking to nullify “any orders or judgments” of the Court, stretches even the most vivid imagination. Such conduct could easily be interpreted as disrespectful, defiant, and arrogant. We are convinced that this would not be the “scheme” of choice of most attorneys. We trust that the United States Attorney for Montana, in employing such a tactic, did not intend to be disrespectful, nor did she intend to intimidate our Tribal Court. Our hope is that she was guilty of no more than an ill advised exercise of poor judgment.
Nonetheless, such a shortcut to avoid litigation in the Tribal Court, while extremely convenient for the United States, was unwarranted and totally inappropriate under the attendant circumstances.
Neither do we excuse our Tribal Court for yielding to a powerful party, even the great sovereign nation of the United States. If the Tribal Court, upon researching the cases furnished by the U.S. Attorney and upon further reflection of it’s earlier order granting the defendants leave to join the United States as a third party defendant, decided that it had erred, the proper method to resolve the matter did not include denying the rights of the defendants in the process. Citing what they believe to be a better approach to resolving the question of jurisdiction, the defendants’ argue:
“So as to have afforded all involved the opportunity to be heard, the proper procedure would have been for the United States of America to have filed a Motion with the Tribal Court pursuant to Rule 7-1 (Fort Peck Tribal Court Rules of Civil Procedure), wherein the Defendants could have responded.” (See Defendants’ Petition for Review, paragraph 9, page f filed August 25, 1997.)
Again, we agree with the defendants.
Accordingly, we find that the defendants’ were deprived of their due process rights accorded them under the Fourteenth Amendment to the U.S. Constitution, as well as the Indian Civil Rights Act of 1968 (25 USC 1302 {}).
If our Tribal Court had reached the correct decision regarding its jurisdiction over the United States, and, further, if none of the litigants were injured in the process, then perhaps, we could have invoked something tantamount to the “no harm, no foul” rule. Regrettably, such was not the case.

*159
Was the Tribal Court correct in deciding that it had no jurisdiction over the United States?

We believe that the answer to this question is yet to be determined. The three (3) cases submitted to the Tribal Court in the U.S. Attorney’s letter are neither conclusive nor dispositive under the facts in this case. First, we examine the “highlights” of defendants’ third party complaint:
1. United States is the only named third party defendant in the title.
2. Specifies the Bureau of Indian Affairs (BIA) as the employer of alleged negligent person.
3. Names Officer Lizotte as an employee of the BIA, an agent of the United States and the individual whose conduct was “indifferent” and “grossly negligent”.
4. Seeks indemnification from the United States for any and all damages that might be awarded to the plaintiff.
The U.S. Attorney cited the Yakima, and White Mountain, cases as standing for the proposition that our Tribal Court has no jurisdiction over the United States. The Yakima and White Mountain cases involved a tribal court restraining a federal officer in the official performance of their duties, thus both cases are distinguishable. Other than the fact that those cases both involved Tribal Courts and the United States, we find no comparative facts. Defendants did not seek to have our Tribal Court restrain “a federal officer in the official performance of (his) duties.” From our reading of defendants’ complaint, they sought only monetary damages indemnifying themselves from damages that might be awarded to plaintiff under 42 USC § 1983 and a common law count of negligent and/or intentional infliction of emotional distress.
Similarly, we find that the citation of the Blackfeet case is also inappropriately placed. Blackfeet deals, in general, with the federal government’s right to exercise power over Indian Country and more specifically, the interference of FBI agents in the official performance of their duties.
We note with some curiosity that no law was cited to our tribal court involving a suit against the United States and/or it’s employees who acted negligently, causing personal injury to Indian persons. Such citations would have been most useful to our Tribal Court in determining whether jurisdiction over the United States might be had under the facts and circumstances of this case.

Does the Tribal Court have jurisdiction over the United States in a § 1983 matter?

First, we note that, in general, the United States enjoys absolute sovereign immunity from any and all lawsuits for which they have not given their consent. Whether the United States is amenable to suit in a § 1983 context was addressed in Petrenko v. United States 859 F.Supp. 647 (E.D.N.Y.1994), wherein the Court stated:
“The United States, as sovereign, is immune from suit, save as it consents to be sued, and the terms of its consent to be sued in any court define that court’s jurisdiction to entertain the suit.” United States v. Sherwood, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). The language of 42 U.S.C. § 1983 nl does not reach the actions of the federal government. District of Columbia, v. Carter, 409 U.S. 418, 425, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973), reh’g denied, 410 U.S. 959, 93 S.Ct. 1411, 35 L.Ed.2d 694 (1973). The statute was designed to “protect private citizens from discrimination by other private citizens acting in an official capacity. The United States has yet to waive its immunity from suit under 42 U.S.C. § 1983. Ricca, v. Unit *160 ed States, 488 F.Supp. 1317, 1325 (E.D.N.Y.1980).” (id. at 649)
Thus, it is clear that the United States cannot be sued in any court for damages sought under § 1983.
Inasmuch as defendants did not name the BIA or Officer Alfred Lizotte as third party defendants, we need not decide at this time whether our Tribal Court would have jurisdiction over them. However, as an advisory to our Tribal Court, we note that federal agencies, in general, are not “persons” within the meaning of 42 USCS § 1983. (See Accardi v. United States, 435 F.2d 1239 (3rd cir.1970)). However, federal law enforcement officers do not enjoy full immunity, but are subject to a “good faith” defense. Skehan v. Board of Trustees, 538 F.2d 53 (3rd Cir. 1976), cert den (1976) 429 U.S. 979, 97 S.Ct. 490, 50 L.Ed.2d 588.

Does the Tribal Court have jurisdiction over the United States under a common law cause of action for intentional or emotional infliction for emotional distress?

We leave this issue for the parties themselves to research and brief. Noting once again the general rule that the United States cannot be sued without consenting, the parties must research, brief, and then argue whether this action qualifies for an exception to that rule, such as “ultra vires” doctrine, or whether it might qualify under some other theory such as “ancillary jurisdiction”. We make no finding as to either of these issues, but simply set them forth as examples of what might have been argued had the defendants been afforded an opportunity to address the Court before their third party complaint was dismissed.
The Order of Dismissal appealed from herein is vacated and the matter is remanded to the Tribal Court with instructions to issue, sua sponte, with notice to all parties, an Order to Show Cause why the third party complaint against the United States should not be dismissed. After a duly scheduled hearing and in accordance with this opinion, the Tribal Court should then issue its jurisdictional order.
CONCUR: GARY M. BEAUDRY, Associate Justice, CARROLL J. DeCOTEAU, Associate Justice.

. The Roosevelt County jail is located within the exterior boundaries of the Fort Peck Indian Reservation, however, defendants contend that the building sits upon alienated non-Indian land. Based upon that contention, defendants filed a Motion to Dismiss for lack of subject matter jurisdiction following the U.S. Supreme Court opinion in Strate v. A-I Contractors. Neither the issue of location, nor the Motion to Dismiss are germane to the issue we decide today.

.Birthmark is a member of the Fort Peck Tribes.