**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

DEC 6 2024



MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

LEXINGTON INSURANCE COMPANY, a
Delaware corporation,

          Plaintiff-Appellant /
          Cross-Appellee,

  v.

MARTIN A. MUELLER, in his official
capacity as Judge for the Cabazon
Reservation Court; DOUG WELMAS,

          Defendants-Appellees /
          Cross-Appellants.

Nos.  23-55144, 23-55193

D.C. No.
5:22-cv-00015-JWH-KK

MEMORANDUM[*]

Appeal from the United States District Court
for the Central District of California
John W. Holcomb, District Judge, Presiding

Argued and Submitted February 16, 2024
Pasadena, California

Before:  BOGGS,[**] NGUYEN, and LEE, Circuit Judges.

    Plaintiff Lexington Insurance Company and defendants Judges Martin

Mueller and Doug Welmas cross-appeal the district court's dismissal and

---

    [*]      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

    [**]     The Honorable Danny J. Boggs, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

summary-judgment decisions. Lexington insures businesses run by the Cabazon Band of Cahuilla Indians, a federally recognized Native American tribe. The Cabazon Band temporarily closed businesses during the COVID-19 pandemic. It submitted an insurance claim for these financial losses, but Lexington denied coverage. The Cabazon Band sued Lexington in the Cabazon Reservation Court. Lexington then sued defendants, who are Reservation Court judges,[1] in federal district court for declaratory and injunctive relief against their continued exercise of jurisdiction over the Cabazon Band's claims. The district court granted in part and denied in part the defendants' motion to dismiss, granted the defendants' summary-judgment motion, and denied Lexington's summary-judgment motion. Both sides cross-appealed. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

We first address whether *Whole Woman's Health v. Jackson*, 595 U.S. 30 (2021), forecloses Lexington's standing to sue the defendants for injunctive relief in federal court. The answer is no. Admittedly, there is some tension between *Whole Woman's Health* and our precedents allowing tribal judges to be sued under *Ex parte Young*, 209 U.S. 123 (1908). Article III grants federal courts "the power to resolve only 'actual controversies arising between adverse litigants,'" *Whole Woman's Health*, 595 U.S. at 39 (quoting *Muskrat v. United States*, 219 U.S. 346, 361 (1911)),

---

[1] Judge Mueller presided over the action in the Reservation Court. Judge Welmas is the Reservation Court's Chief Judge and oversees the court's administration.

but judges are not adverse to the parties whose cases they decide, *id.* at 40. At first blush, it is not clear why this rationale would not apply to tribal judges.

We are bound by circuit precedent because it is not "clearly irreconcilable" with *Whole Woman's Health*. *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc). This is a high bar, and we must apply our prior circuit precedent if we can do so without "'running afoul' of the intervening authority." *Lair v. Bullock*, 697 F.3d 1200, 1207 (9th Cir. 2012) (quoting *United States v. Orm Hieng*, 679 F.3d 1131, 1140 (9th Cir. 2012)). Such is true here. *Whole Woman's Health* involved only a suit against state-court judges (not a suit against tribal-court judges) and an attack only against a statute's constitutionality (not an attack on the jurisdiction of a judge's court). And *Whole Woman's Health* itself recognized the possibility that its rationale does not foreclose *Ex parte Young* actions when a plaintiff seeks "an injunction only to prevent the judge from enforcing a rule of her own creation," rather than statutory law. *Whole Woman's Health*, 595 U.S. at 42. Thus, *Whole Woman's Health* is not clearly irreconcilable with our circuit's longstanding recognition that the remedy to contest tribal-court jurisdiction is to seek prospective injunctive relief against a tribal-court judge. *See, e.g.*, *United States v. Yakima Tribal Ct.*, 806 F.2d 853, 857, 861 (9th Cir. 1986); *Salt River Project Agric. Improvement & Power Dist. v. Lee*, 672 F.3d 1176, 1177 (9th Cir. 2012).

We review de novo the district court's determination of tribal-court

3

jurisdiction, *Smith v. Salish Kootenai Coll.*, 434 F.3d 1127, 1130 (9th Cir. 2006) (en banc), its decision to grant a motion to dismiss, *Great Minds v. Office Depot, Inc.*, 945 F.3d 1106, 1109 (9th Cir. 2019), and its decision to grant summary judgment, *JL Beverage Co. v. Jim Beam Brands Co.*, 828 F.3d 1098, 1104 (9th Cir. 2016). We may affirm the district court's judgment on any ground supported by the record. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014).

This case is squarely addressed by this court's decision in *Lexington Insurance Co. v. Smith*, 94 F.4th 870 (9th Cir. 2024), *reh'g en banc denied*, 2024 WL 4195334 (9th Cir. Sept. 16, 2024). We concluded in *Smith*—on facts indistinguishable from the facts in this case—that a tribal court had jurisdiction to hear a tribe's insurance claims against Lexington. *Smith* concerned an insurance-contract suit brought by the Suquamish Tribe and its businesses against Lexington. *Id.* at 876. Like the Cabazon Band, the Suquamish Tribe ran businesses that were insured by Lexington and temporarily closed during the pandemic. *Id.* at 876–77. The Suquamish Tribe filed insurance claims, which Lexington contended might not be covered. *Id.* at 877. As a result, they sued Lexington in Suquamish Tribal Court. *Id.* After Lexington's motion to dismiss was rejected by the Suquamish Tribal Court and Suquamish Tribal Court of Appeals, Lexington sued the tribal-court judges in district court and argued that the Suquamish Tribal Court lacked jurisdiction. *Id.* at

878.  The district court ruled against Lexington, who then appealed to this court.  *Id.*

On appeal, we "conclude[d] that Lexington's conduct occurred not only on the reservation, but on tribal lands."  *Id.* at 880.  We emphasized that "a tribe has regulatory jurisdiction over a nonmember who 'enters tribal lands *or conducts business with the tribe*.'"  *Id.* at 881 (quoting *Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 142 (1982)).  We then "easily conclude[d] that Lexington's business relationship with the Tribe satisfies the requirements for conduct occurring on tribal land, thereby occurring within the boundaries of the reservation and triggering the presumption of jurisdiction."  *Id.* at 882.  We also determined that "Lexington's insurance contract with the Tribe squarely satisfies [the] consensual-relationship exception" from *Montana v. United States*, 450 U.S. 544, 565 (1981), to tribal lack of jurisdiction over nonmembers due to Lexington's relationship with the tribe through commercial dealing.  *Smith*, 94 F.4th at 883–84.

For the same reasons, we conclude here that the Reservation Court has jurisdiction.  We affirm the district court, albeit on the alternative ground that Lexington's insurance contract with the Cabazon Band satisfies *Montana*'s consensual-relationship exception.

**AFFIRMED.**